**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| Smyers, *et al*, | * | |
| On behalf of themselves and other members of the general public similarly situated, | * * | Case No. 2:17-cv-1110 |
| | | Judge Algenon L. Marbley |
| Plaintiffs.., | * | Magistrate Judge Chelsey M. Vascura |
| v. | * | |
| Ohio Mulch Supply, Inc., *et al*, | * | |
| Defendants. | * | |

**JOINT MOTION FOR APPROVAL OF FLSA SETTLEMENT
AND DISMISSAL WITH PREJUDICE**

**I.  INTRODUCTION**

Representative Plaintiff Diane Smyers n/k/a Diane Moore and Phillip Smyers (the "Representative Plaintiffs") on behalf of themselves and all opt-in Plaintiffs (hereinafter collectively the "Plaintiffs"), and Plaintiffs Ray Carter, Nathen Dunkle, and Jason Borden (collectively, the "Carter Plaintiffs"), and Defendants Ohio Mulch Supply, Inc. and Jim Weber, II (collectively, the "Defendants") jointly move this Court for approval of the respective settlement in this action[1] pursuant to the terms of the Settlement Agreements and General Releases, copies of which are attached hereto as **Exhibits A and B** along with all attachments. The settlement fully resolves all claims between the parties in both *Smyers, et al. v. Ohio Mulch*

---

[1] On equal date with this filing, the parties filed a Joint Motion to Consolidate Cases for Purposes of Settlement Approval seeking consolidation of *Smyers, et al. v. Ohio Mulch Supply, Inc., et al.* Case No. 2:17-CV-1110 with *Carter, et al. v. Ohio Mulch Supply, Inc., et al.,* Case No. 2:19-CV-1632 for purposes of seeking approval of a global settlement of both cases.

*Supply, Inc., et al.* Case No. 2:17-CV-1110 and *Carter, et al. v. Ohio Mulch Supply, Inc., et al.,* Case No. 2:19-CV-1632.

The Settlement was reached by experienced counsel during arms-length, good faith negotiations with the assistance of mediator Robert D. Erney. If approved, it will provide substantial individual payments to 54 individuals, including named Plaintiffs. A proposed entry is attached hereto as **Exhibit C** for the purpose of approving the settlement and dismissing this action with prejudice, except to retain jurisdiction for the limited purpose of enforcing the terms of the Settlement Agreements, if necessary.

The settlement documents submitted for approval or entry by the Court consist of the following:

| | |
|---|---|
| **Exhibits A and B:** | **Settlement Agreements and Releases with Exhibits** |
| **Exhibit C:** | **Proposed Order of Dismissal and Approving Settlement** |
| **Exhibit D:** | **Declarations of Matthew J.P. Coffman and Peter A. Contreras** |

The following sections explain the nature of the Action, the negotiations, the principal terms of the Settlement, and the propriety of approving the Settlement.

## II. FACTUAL AND PROCEDURAL BACKGROUND

A. The Two (2) Actions and Global Settlement.

Representative Plaintiff Diane Smyers ("Smyers" or "Representative Plaintiff Smyers") filed the instant action[2] against Defendants Ohio Mulch Supply, Inc. and Jim Weber, II (collectively, the "Defendants") on December 18, 2017 (the "Smyers Action"). Plaintiffs' complaint alleged that Defendants violated the Fair Labor Standards Act ("FLSA") by failing to

---

[2] Robert Carter was also a named Plaintiff when the Smyers Action was filed. However, he is no longer a party as judgment in his favor was entered on April 6, 2018 after accepting a Rule 68 Offer of Judgment from Defendants (Doc. 10).

2

pay overtime compensation to Plaintiffs and other similarly-situated employees. On February 16, 2018, Defendants filed an Answer to Plaintiffs' Complaint. (ECF No. 3). On March 9, 2018, Defendants filed an Amended Answer to Plaintiffs' Complaint. (ECF No. 5).

On March 23, 2018, Plaintiffs' filed a Motion to Certify the Class conditionally pursuant to 29 USC 216(b). (ECF No. 6). Defendants filed their opposition to the Motion on May 4, 2018 (ECF No. 15). The parties thereafter filed numerous other motions and responses relating to the pending Motion to Certify. (ECF No. 18, filed May 25, 2018, Reply in Support of Motion to Certify); (ECF No. 19, June 6, 2018, Defendants' Motion to Strike Declaration; (ECF No. 20, filed June 27, 2018, Plaintiffs' Response to Motion to Strike Declaration, (ECF No. 21, filed July 11, 2018, Reply in Support of Motion to Strike); (ECF No. 22, filed August 13, 2018, Notice of Supplemental Witness Statement). The Court ultimately entered an Order granting Plaintiffs' Motion to Certify on January 4, 2019 (ECF No. 32) and denied Defendants' Motion to Reconsider[3] such Order (ECF No. 34 and No. 39). After Court supervised notice was issued, a total of eighty-five (85) individuals[4] ultimately opted in, including the Representative Plaintiff.

On April 26, 2019, Plaintiffs Ray Carter, Nathen Dunkle, and Jason Borden (collectively, the "Carter Plaintiffs") filed a separate action against Defendants. (Doc. 1 in Case No. 2:19-CV-1632) (hereafter the "Carter Action"). The Carter Plaintiffs also alleged overtime violations under the FLSA against Defendants on behalf of themselves and other similarly situated current and former employees. On May 28, 2019, a related case memorandum was entered and the Carter Action was transferred to the docket of Your Honor because of the pendency of the instant related action. (Doc. 74).

---

[3] Plaintiffs' opposition to the Motion for Reconsideration was filed on January 9, 2019 (ECF No. 37).
[4] Not all individuals who opted-in had claims and therefore the settlement class consists of 51 individuals in the Smyers Action.

In the Smyers and Carter Actions, Representative Plaintiffs allege, *inter alia*, that Defendants violated the FLSA and Ohio law by automatically deducting a half (.5) hour from employees' daily hours worked for lunch regardless of whether a half (.5) hour lunch was taken. (Coffman Decl. ¶13; Contreras Decl. ¶12). Plaintiffs further allege that Defendants violated the Ohio Prompt Pay Act ("OPPA") by failing to pay Plaintiffs all of their wages within the time period provided by the OPPA. (Coffman Decl. ¶13; Contreras Decl. ¶12).

Defendants filed their Answers to the Complaints in both the Smyers and Carter Actions. Defendants deny any liability or wrongdoing of any kind. (Coffman Decl. ¶14; Contreras Decl. ¶13).

Plaintiffs served Defendants with written discovery. In response, Defendants produced Plaintiffs' time and payroll data and other responsive documents on a rolling basis beginning in April of 2019, with additional productions on May 3, 2019, July 11, 2019, December 16, 2019, and January 24, 2020. In total, approximately 5,000 pages of responsive documents, pay records and materials were produced. Plaintiffs' Counsel spent significant time analyzing Defendants' produced documents. (Coffman Decl. ¶17-19; Contreras Decl. ¶16-18).

On January 10, 2020, Plaintiffs served and filed a Notice of Rule 30(b)(6) deposition of the Defendant. (Doc. 78 in the Smyers Action). However, before any depositions were taken, the Parties agreed to mediation. Prior to mediation, the Parties calculated the damages they believe Plaintiffs alleged to be owed for claimed underpaid overtime. Given the volume of the data, it took the Parties significant time to calculate damages. (Coffman Decl. ¶22; Contreras Decl. ¶21).

B. <u>The Negotiations</u>

On March 3, 2020, the Parties attended a full day mediation and negotiated a resolution of both the Smyers and Carter Actions in earnest. (Coffman Decl. ¶21-24; Contreras Decl. ¶20-23). The negotiations were successful, resulting in the Parties executing a settlement agreement and release, subject to approval by the Court pursuant to § 216(b). (Coffman Decl. ¶21-24; Contreras Decl. ¶20-23).

Because the agreement reached following the mediation resolved all claims existing in both the Smyers and Carter Actions, the Parties have jointly moved the Court on equal date with this filing to consolidate the two (2) Actions for purposes of moving for and obtaining Court approval of the global settlement.

    C.    <u>The Settlement Terms.</u>

If approved by the Court, the Settlement will cover 54 individuals, including Representative Plaintiffs and Opt-In Plaintiffs. (*See* **Exhibits A and B,** including Exhibit 1 to Smyers Agreement). The total settlement amount is $95,000, which sum will cover: (a) all of the individual payments to the 54 Plaintiffs in the Smyers and Carter Actions; (b) Representative Plaintiff Smyers' Service Payment; and (c) Plaintiffs' Counsel's attorneys' fees and expenses incurred in both the Smyers and the Carter Actions. Plaintiffs' Counsel believes the proposed Settlement is in the best interests of the Plaintiffs. (Coffman Decl. ¶43-44; Contreras Decl. ¶41-42). Defendants dispute any liability, but do not challenge Plaintiffs' counsel's assessment in this regard.

$33,127.82 of the settlement amount will be divided into individual payments to the Plaintiffs based on their alleged overtime damages as calculated by Plaintiffs' Counsel and approved by Defendant. (*See* **Exhibit A** at Smyers Exhibit 1). Based on Plaintiffs' counsel's calculations, this amount represents approximately 125% of the alleged unpaid overtime

damages for these individuals. This amount additionally includes amounts calculated based on alleged off-the-clock work performed by five (5) plaintiffs. The three (3) Carter Plaintiffs will additionally receive $1,757.93 based on their alleged unpaid overtime damages as provided in the Carter Settlement Agreement. (*See* **Exhibit B**). $3,000 of the settlement amount will be paid to Representative Plaintiff Smyers as a Service Payment in addition to her individual payment for her services provided in this matter on behalf of the class. $57,114.25 of the settlement amount will be paid to Plaintiffs' Counsel for attorneys' fees and expenses ($55,000 in fees and $2,114.25 expenses) incurred in both the Smyers Action and the Carter Action and the global resolution of both lawsuits.

In exchange for these payments and other consideration provided for in the Agreement, both the Smyers Action and the Carter Action will be dismissed in their entirety with prejudice, and the Representative and opt-in Plaintiffs will release Defendants from federal and state wage-and-hour claims, rights, demands, liabilities and causes of action asserted and/or that could have been asserted in the Complaints, including but not limited to claims for unpaid wages, unpaid overtime compensation, liquidated damages, interest, attorneys' fees, and expenses, pursuant to the Fair Labor Standards Act and state law. A proposed Order of Dismissal and Approving Settlement is attached hereto as **Exhibit C**.

### III. THE PROPRIETY OF APPROVAL

The Settlement is subject to approval by the Court pursuant to § 216(b) of the FLSA. As shown in the attached Declarations of Matthew J.P. Coffman, and Peter A. Contreras, and as explained below, Court approval is warranted on all scores.

    **A.**    **The Seven-Factor Standard Is Satisfied**

The court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA § 16(b) "after scrutinizing the settlement for fairness." *Landsberg v. Acton Enterprises, Inc.*, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982) (the court should determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute") (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946))).

As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'" *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008). The Sixth Circuit uses seven factors to evaluate class action settlements, and the *Crawford* court applied those factors in assessing the fairness of an FLSA settlement:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983)), *quoted in Crawford*, 2008 WL 4724499 at *3. As shown below and in the Declarations of Matthew J.P. Coffman, and Peter A. Contreras, this standard supports approval of the Settlement.

### 1) No Indicia of Fraud or Collusion Exists

The Parties' counsel each have extensive experience litigating FLSA claims, including claims for unpaid overtime. The Agreement was achieved only after arms-length and good faith

7

negotiations between the Parties with the assistance of well-respected mediator Robert D. Erney (Coffman Decl. ¶19-24; Contreras Decl. ¶20-23). As such, there is no indicia of fraud or collusion.

### 2) The Complexity, Expense and Likely Duration of Continued Litigation Favor Approval

The policy favoring the settlement of collective actions and other complex cases applies with particular force here.  This is especially true here where the global resolution resolves two (2) separate collective action lawsuits. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming.  Moreover, the Parties continue to disagree over the merits of Plaintiffs' claims.  Plaintiffs' claim that Defendants failed to properly pay for all hours worked due to an automatic lunch deduction policy in computing overtime compensation. Defendants deny any wrongdoing.  In addition, the Parties continue to disagree about whether the two-year limitations period for non-willful violations or three-year limitations period for willful violations applied. (Coffman Decl. ¶44; Contreras Decl. ¶42).

If forced to litigate this case further, the Parties would certainly engage in complex, costly, and protracted wrangling.  The Settlement, on the other hand, provides substantial relief to Plaintiffs promptly and efficiently, and amplifies the benefits of that relief through the economies of class resolution for the two (2) cases at issue in this consolidated matter. (Coffman Decl. ¶47; Contreras Decl. ¶45).

### 3) Investigation Was Sufficient to Allow the Parties to Act Intelligently

The Parties engaged in substantial investigation and discovery prior to negotiating the Settlement.  Prior to filing the Action, Plaintiffs' Counsel performed a significant amount of research and factual investigation of the claims to set forth a factually specific and accurate complaint for the Court and Defendant.  After filing the Action, the Parties engaged in extensive

8

written discovery. Defendants produced Plaintiffs' time and payroll data and documents totaling approximately 5,000 pages, and Plaintiffs' Counsel analyzed those records. In addition, Plaintiffs' Counsel analyzed those records to compute alleged damages.  (Coffman Decl. ¶18; Contreras Decl. ¶17).

Thus, the legal and factual issues in the case were thoroughly researched by counsel for the Parties, and all aspects of the dispute are well-understood by both sides.

### 4) The Risks of Litigation Favor Approval

Counsel for both sides believe in the merits of their clients' positions, but nonetheless recognize that the litigation of claims is uncertain in terms of duration, cost, and result. Moreover, in the present case, Defendants raise affirmative defenses to Plaintiffs' claims, and the outcome of those defenses is uncertain as well. Continued litigation would be risky for all. (Coffman Decl. ¶44-47; Contreras Decl. ¶43-46).

### 5) Uncertainty of Recovery Supports Approval

Plaintiffs' range of possible recovery is also open to dispute.  Even if Plaintiffs succeeded on the merits of their claims, the amount of recovery is uncertain and something upon which the Parties continue to disagree.

### 6) Experienced Counsels' Views Favor Approval

Plaintiffs' Counsel is experienced in wage-and-hour collective and class actions, have acted in good faith, and have represented Plaintiffs' best interests in reaching the Settlement. Counsel support the Settlement as fair and reasonable, and in the best interest of the Plaintiffs as a whole, as described in the Declarations of Matthew J.P. Coffman and Peter Contreras. (Coffman Decl. ¶43; Contreras Decl. ¶41).

### B. The Settlement Distributions Are Fair, Reasonable and Adequate

As a part of the scrutiny it applies to an FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499 (E.D. Ky. Oct. 23, 2008) (citing *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 855 (1999). All components of the proposed distribution are proper and reasonable, and the settlement as a whole is fair, reasonable and adequate for the Plaintiffs.

### 1) The Individual Payments Are Reasonable and Adequate

The settlement in this case is fair and should be approved because the individual payments were calculated proportionally on each Plaintiffs alleged overtime damages during the applicable recovery periods and provides what Plaintiffs' counsel believes to be 125% of the Plaintiffs' alleged overtime damages. *See* **Exhibit C** (Contreras Decl. ¶27) (Coffman Decl. ¶28). The average payment to these individuals is $649.57. Further, the additional payments to the opt-in Plaintiffs who worked as hourly managers at Defendants' stores are reasonable based upon the additional claims those five (5) Plaintiffs had for off-the-clock wages that were unique to these Plaintiffs. **Exhibit C** (Contreras Decl. ¶42) (Coffman Decl. ¶44).

### 2) Representative Plaintiff's Service Award Is Proper and Reasonable

Service awards to a representative plaintiff recognizing the value of his or her services on behalf of other participants are proper. As stated in *In re Dunn & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366 (S.D. Ohio 1990):

> Numerous courts have not hesitated to grant incentive awards to representative plaintiffs who have been able to effect substantial relief for classes they represent.

130 F.R.D. at 373 (citing *Wolfson v. Riley*, 94 F.R.D. 243 (N.D. Ohio 1981); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985); *In re Minolta Camera Products Antitrust Litigation*, 666 F. Supp. 750, 752 (D. Md. 1987)).

In this Circuit, service awards to representative plaintiffs are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing the case and advising counsel in prosecution of case." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997).

The courts recognize that "differentiation among class representatives based upon the role each played may be proper in given circumstances." *Dun & Bradstreet*, 130 F.R.D. at 374 (citing *In re Jackson Lockdown/MCO Cases*, 107 F.R.D. 703, 710 (E.D. Mich. 1985)). *See also Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (among the factors warranting incentive awards are the "time and effort spent" by the individuals in question and "whether these actions resulted in a substantial benefit to Class Members").

Representative Plaintiff Smyers contributed significant time, effort, and detailed factual information in the years preceding this settlement enabling the Parties to successfully resolve this matter, including but not limited to attending the full day mediation that ultimately resulted in the instant global resolution of both the Smyers and Carter Actions.  Her time and efforts support the requested service payment. (Coffman Decl. ¶31; Contreras Decl. ¶32).

### 3) The Attorneys Fees and Expenses to Plaintiffs' Counsel Are Proper and Reasonable

After the Court has confirmed that the terms of settlement are fair to Plaintiffs, it may review the Parties' agreement as to the provision of fees and costs to Plaintiffs' Counsel.  The

11

global Settlement reflects Defendants agreement to pay Plaintiffs' Counsel $57,114.25 of the settlement amount for attorneys' fees and expenses incurred in both the Smyers and Carter Actions ($55,000 in fees and $2,114.25 advanced case expenses). This amount represents the amount of time and expense that Plaintiffs' Counsel has dedicated to these two (2) lawsuits in this consolidated action. (Coffman Decl. ¶34-41; Contreras Decl. ¶33-40).

Although Defendants dispute liability, the FLSA has a fee-shifting provision that provides that the prevailing party shall recover reasonable attorneys' fees and litigation costs. 29 U.S.C. § 216(b) (a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action."); *see also* O.R.C. § 4111.10(A) (liability includes paying "costs and reasonable attorney's fees as may be allowed by the court"). Indeed, "[a]n award of attorneys' fees under the FLSA is **mandatory**, with the amount of fees within the discretion of the court." *Cruz v. Vel-A-Da, Inc*. Case No. 3:90CV7087, 1993 WL 659253, *3 (N.D. Ohio May 14, 1993) (*citing United Slate, Tile & Composition v. G & M Roofing,* 732 F.2d 495, 501 (6th Cir.1984)). In *Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994), the Court of Appeals held that the FLSA's mandatory attorney's fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley,* 19 F.3d at 1134 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502 (6th Cir. 1984)).

Congress has determined that it is important for FLSA rights to be enforced, and that reasonable attorney fees must be awarded to provide for such enforcement, particularly where the victims of FLSA violations are often low-wage workers whose per-person damages may not

12

be significant. *See, e.g., Fegley,* 19 F.3d at 1134-43. There is no numeric relationship required between the amount of economic losses recovered and the amount of fees recoverable. Congress has determined that it is important for FLSA rights to be enforced, and that reasonable attorney fees must be awarded to provide for such enforcement, particularly where the victims of FLSA violations are often low-wage workers whose per-person damages may not be significant. *See, e.g., Fegley v. Higgins,* 19 F.3d 1126, 1134-43 (6th Cir. 1994) (FLSA fee award "encourages the vindication of congressionally identified policies and rights").

It is not uncommon for fee awards to exceed the amount recovered by plaintiffs in lost wages. *See City of Riverside v. Rivera,* 477 U.S. 561, 574, 578 (1986) (no rule of proportionality in cases awarding fees under § 1988, in order to ensure lawyers are available to represent persons with legitimate claims).  This principle has been applied in many cases in the FLSA context. *See, e.g., Holland v. New Method Packaging, LLC, et al*, No. 3:16-cv-00309-TMR-MJN, Doc. #23 (S.D. Ohio 2017) (Rose, J.) (in a case alleging violations of the FLSA, the Court approved settlement payment of $13,395.97 to the named plaintiff and $19,000 for attorneys' fees and costs); *Pellegrini v. Tower 10, LLC, et al*, No. 2:16-cv-00293-JLG-TPK, Doc. #31 and 32 (S.D. Ohio 2017) (Graham, J.) (in a FLSA case, the Court approved settlement of $2,000 to the named plaintiff and $11,500 for attorneys' fees and costs); *Jasper, et al v. Home Health Connection, Inc.*, No. 2:16-cv-00125-EAS-EPD (S.D. Ohio 2016) (Sargus, J.) (in a FLSA case, the Court approved $35,000 to named plaintiffs and class and $63,000 for attorneys' fees and costs).[5]

---

[5] *Fox v. Tyson Foods, Inc.*, No. 4:99-CV-1612-VEH, Doc. 819 (N.D. Ala. Feb. 17, 2009) (in an FLSA case in which three individual donning and doffing claims were tried, the plaintiffs collectively recovered $4,937.20 in wages but were awarded $765,618.10 in attorneys' fees based the attorney's lodestar hourly rates); *Hodgson v. Miller Brewing Co.,* 457 F.2d 221, 228-29 (7th Cir. 1972); *Perdomo v. Sears, Rosebuck & Co.,* Case No. 97-2822-CIV-T-17A, 1999 WL 1427752, *10 (M.D. Fla. Dec. 3, 1999); *Wales v. Jack M. Berry, Inc.,* 192 F.Supp.2d 1313, 1327 (M.D. Fla. 2001); *Heder v. City of Two Rivers,* 255 F.Supp.2d 947, 955 (E.D. Wis. 2003); *Perrin v. John B. Webb & Assocs.,* Case No. 604CV399ORLKRS, 2005 WL 2465022, *4 (M.D. Fla. Oct. 6, 2005)("in order for plaintiffs with minimal claims to obtain counsel, those counsel must be able to recover a reasonable fee for their time"). *See also Howe v. Hoffman-Curtis Partners Ltd.* 215 Fed. Appx. 341, 342 (5th Cir. Jan. 30, 2007) ("Given the nature of claims under

*See, e.g., Fox v. Tyson Foods, Inc.*, No. 4:99-CV-1612-VEH, Doc. 819 (N.D. Ala. Feb. 17, 2009) (in an FLSA case in which three individual donning and doffing claims were tried, the plaintiffs collectively recovered $4,937.20 in wages but were awarded $765,618.10 in attorneys' fees based on the attorney's lodestar hourly rates); *Hodgson v. Miller Brewing Co.,* 457 F.2d 221, 228-29 (7th Cir. 1972); *Perdomo v. Sears, Rosebuck & Co.,* Case No. 97-2822-CIV-T-17A, 1999 WL 1427752, *10 (M.D. Fla. Dec. 3, 1999); *Wales v. Jack M. Berry, Inc.,* 192 F.Supp.2d 1313, 1327 (M.D. Fla. 2001); *Heder v. City of Two Rivers,* 255 F.Supp.2d 947, 955 (E.D. Wis. 2003); *Perrin v. John B. Webb & Assocs.,* Case No. 604CV399ORLKRS, 2005 WL 2465022, *4 (M.D. Fla. Oct. 6, 2005) ("in order for plaintiffs with minimal claims to obtain counsel, those counsel must be able to recover a reasonable fee for their time").[6]

---

the FLSA, it is not uncommon that attorney fee requests can exceed the amount of judgment in the case by many multiples."); *Fegley v. Higgins*, 19 F.3d 1126, 1134-35 (6th Cir. 1994) (upholding award of $40,000 in fees even though Plaintiff recovered only $7,680 in damages); *Cox v. Brookshire Grocery Co.,* 919 F.2d 354, 358 (5th Cir. 1990) (upholding award of $9,250 in attorney's fees even though Plaintiff recovered only $1,698.00); *Bonnette v. Cal. Health & Welfare*, 704 F.2d 1465, 1473 (9th Cir. 1983) (affirming award of $100,000 in attorney's fees for a recovery of $20,000); *Albers v. Tri-State Implement, Inc*., 2010 U.S. Dist. LEXIS 23450, *66-86 (D.S.D. Mar. 12, 2010) (awarding $43,797 in fees even though plaintiffs' combined damages totaled only $2,137.97); *King v. My Online Neighborhood, Inc*., 2007 U.S. Dist. LEXIS 16135 (M.D. Fla. Feb. 20, 2007) (approving a settlement for $4,500 in unpaid wages and $10,500 in attorney's fees); *Heder v. City of Two Rivers*, 255 F. Supp. 2d 947, 955-56 (E.D. Wis. 2003) (awarding $36,204.88 in fees even though plaintiff's damages totaled only $3,540.00); *Griffin v. Leaseway Deliveries, Inc.,* 1992 U.S. Dist. LEXIS 20203 (E.D. Pa. Dec. 31, 1992) (awarding attorney's fees of $33,631.00 for a plaintiff's award of $17,467.20); *Holyfield v. F.P. Quinn & Co.,* 1991 U.S. Dist. LEXIS 5293, *1 (N.D. Ill. Apr. 22, 1991) (awarding $6,922.25 in attorney's fees for a judgment in the amount of $921.50).

[6] *See also Howe v. Hoffman-Curtis Partners Ltd.* 215 Fed. Appx. 341, 342 (5th Cir. Jan. 30, 2007) ("Given the nature of claims under the FLSA, it is not uncommon that attorney fee requests can exceed the amount of judgment in the case by many multiples."); *Fegley v. Higgins*, 19 F.3d 1126, 1134-35 (6th Cir. 1994) (upholding award of $40,000 in fees even though Plaintiff recovered only $7,680 in damages); *Cox v. Brookshire Grocery Co.,* 919 F.2d 354, 358 (5th Cir. 1990) (upholding award of $9,250 in attorney's fees even though Plaintiff recovered only $1,698.00); *Bonnette v. Cal. Health & Welfare*, 704 F.2d 1465, 1473 (9th Cir. 1983) (affirming award of $100,000 in attorney's fees for a recovery of $20,000); *Albers v. Tri-State Implement, Inc.,* 2010 U.S. Dist. LEXIS 23450, *66-86 (D.S.D. Mar. 12, 2010) (awarding $43,797 in fees even though plaintiffs' combined damages totaled only $2,137.97); *King v. My Online Neighborhood, Inc.,* 2007 U.S. Dist. LEXIS 16135 (M.D. Fla. Feb. 20, 2007) (approving a settlement for $4,500 in unpaid wages and $10,500 in attorney's fees); *Heder v. City of Two Rivers*, 255 F. Supp. 2d 947, 955-56 (E.D. Wis. 2003) (awarding $36,204.88 in fees even though plaintiff's damages totaled only $3,540.00); *Griffin v. Leaseway Deliveries, Inc.,* 1992 U.S. Dist. LEXIS 20203 (E.D. Pa. Dec. 31, 1992) (awarding attorney's fees of $33,631.00 for a plaintiff's award of $17,467.20); *Holyfield v. F.P. Quinn & Co.*, 1991 U.S. Dist. LEXIS 5293, *1 (N.D. Ill. Apr. 22, 1991) (awarding $6,922.25 in attorney's fees for a judgment in the amount of $921.50).

Plaintiffs have submitted sufficient evidence to support of the amount requested for attorneys' fees and costs. The services rendered to Plaintiffs reflect the extensive experience Plaintiffs' Counsel have in FLSA class and collective actions. This experience led to the settlement of the two (2) separate Smyers and Carter actions, which represents what Plaintiffs' counsel calculates to be 125% of the alleged unpaid overtime damages.  While disputing liability, Defendants have agreed to pay these fees and costs as part of the negotiated Agreement that resolves both cases in full.

Expenses are estimated to be approximately $2,114.25. All expenses were incurred during the course of the litigation of these Actions or will be incurred during the administration of the Settlement. (Coffman Decl. ¶40).

### IV.    CONCLUSION

The Parties submit that this Settlement is a fair and reasonable resolution of the disputed issues, which is consistent with the goal of securing the just, speedy, and inexpensive determination of every action.  Accordingly, the Parties request that this Court: (1) enter the proposed Order of Dismissal and Approving Settlement; (2) approve Plaintiffs' Counsel's request for attorneys' fees, costs, and expenses; (3) approve the Representative Plaintiffs' Service Payments; and (4) retain jurisdiction to enforce the Settlement.

Dated: June 4, 2020

    Respectfully submitted,

    */s/ Matthew J.P. Coffman*
    Matthew J.P. Coffman (0085586)
    **Coffman Legal, LLC**
    1550 Old Henderson Road, Suite 126
    Columbus, Ohio 43220
    Telephone: (614) 949-1181
    Facsimile: (614) 386-9964
    Email: mcoffman@mcoffmanlegal.com

/s/ Peter Contreras
Peter Contreras (0087530)
**CONTRERAS LAW, LLC**
1550 Old Henderson Road, Suite 126
Columbus, Ohio 43220
Phone: 614-787-4878
Fax: 614-923-7369
Email: peter.contreras@contrerasfirm.com

*Attorneys for Named Plaintiff and those similarly situated*

/s/  Christopher J. Hogan
Christopher J. Hogan (0079829)
Zachary C. Maciaszek (0097751)
**ZEIGER, TIGGES & LITTLE LLP**
3500 Huntington Center
Columbus, Ohio 43215
Phone: 614-365-9900
Fax: 614-365-7900
hogan@litohio.com

*Attorneys for Defendants*

16