IN THE UNITED STATES DISTRICT
COURT FOR THE SOUTHERN
DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **SMYERS**, *et al*, : | |
| : | Case No. 2:17-cv-1110; 19-cv-1632 |
| On behalf of themselves and : | |
| Other members of the : | **Chief Judge Algenon L. Marbley** |
| general public : | |
| similarly situated, : | **Magistrate Judge Chelsey M. Vascura** |
| : | |
| **Plaintiffs,** : | |
| : | |
| v. : | |
| : | |
| **OHIO MULCH SUPPLY, INC.**, *et al*, : | |
| : | |
| : | |

## **OPINION & ORDER**

This matter is before the Court on the Parties' Joint Motion for Final Approval of FLSA Settlement pursuant to § 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). ("Joint Motion"). (ECF No. 83). For the reasons stated below, this Court **GRANTS with modifications** the parties' motion for final approval.

### I. BACKGROUND

On December 18, 2017, Plaintiff Diane Smyers filed the instant action against Defendants Ohio Mulch Supply, Inc. and Jim Weber, II (collectively, the "Defendants") on behalf of herself and other similarly situated, current and former employees ("Plaintiffs"), alleging that Defendants violated the Fair Labor Standards Act ("FLSA") by failing to pay employees for the time they worked at Ohio Mulch Supply, Inc. On April 26, 2019, Plaintiff Ray Carter, Nathan Dunkle, and Jason Borden also filed a suit on behalf of themselves and others similarly situated in related Case No. 2:19-CV-1632. On June 4, 2020, the parties reported to the Court that they had reached a

1

settlement. The parties thereafter filed a joint motion to consolidate their cases for settlement (ECF No. 82), which this Court granted on June 9, 2020. The parties then jointly moved to approve that settlement agreement. (ECF No. 83). Pursuant to the settlement agreement, 54 Plaintiffs (both representatives and opt-ins) are set to receive an aggregate amount of $33,127.82 for their unpaid wages. Counsel for Plaintiffs is set to receive an attorneys' fees award of $57,114.25. Representative Plaintiff Smyers is set to receive a Service Payment of $3,000, in addition to her individual payment, for her services provided in this matter on behalf of the class.

## II. LAW & ANALYSIS

As a general rule, "[t]he FLSA's provisions are mandatory and, except as otherwise provided by statute, are generally not subject to being waived, bargained, or modified by contract or by settlement." *Kritzer v. Safelite Solutions, LLC*, 2012 WL 1945144, at *5 (S.D. Ohio May 30, 2012). One exception is when a court reviews and approves a settlement agreement in a private action for back wages under 29 U.S.C. § 216(b). *Id.* The Court's role in approving an FLSA settlement, and presumably an Ohio wage and hour settlement, "is comparable to that of a court in a settlement of a class action brought pursuant to Fed. R. Civ. P. 23." *See id.* (quoting *Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933, *5 (N.D. Ohio Mar. 8, 2010)). Hence, the Court must ensure that there is a bona fide dispute between the parties and that the settlement is a product of arms-length negotiation that was fair, reasonable, and adequate. *See id.* at *5-6.

### A. Whether there was a Bona Fide Dispute Between the Parties

The requirement that there be a bona fide dispute between the parties stems from the need to ensure the parties are not negotiating around the FLSA's requirements concerning wages and overtime. *Id.* at *5. At the heart of this case is whether Plaintiffs are entitled to compensation for the time they worked at Ohio Mulch Supply, Inc. Plaintiffs maintain that Defendants failed to pay

them for the overtime that they worked, while Defendants dispute any liability. This lawsuit has been pending for over two years, and was resolved only after extensive discovery, motion practice, and mediation. *See Hainey v. Parrott*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007) ("The participation of an independent mediator in the settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties."). Given the above, the Court is satisfied that the Settlement Agreement is not an attempt to negotiate around the FLSA's mandatory requirements of compensating employees for unpaid wages.

### B. Whether Negotiations were Fair, Reasonable, and Adequate

In determining whether a proposed FLSA settlement is fair, reasonable, and adequate, a district court is required to consider and balance several factors: (a) Plaintiff's likelihood of ultimate success on the merits balanced against the amount and form of relief offered in settlement; (b) the complexity, expense, and likely duration of the litigation; (c) the stage of the proceedings and the amount of discovery completed; (d) the judgment of experienced trial counsel; (e) the nature of the negotiations; (f) the objections, if any, raised by the class members; and (g) the public interest. *Kritzer*, 2012 WL 1945144, at *6. Here, the Court finds that the balance of factors weighs in favor of approving the Settlement Agreement.

#### 1. Likelihood of Success

The most important factor the Court must consider when approving an FLSA settlement "is the plaintiffs' probability of success on the merits, particularly when weighed against the recovery provided in the proposed settlement agreement." *Id.* The lower the likelihood of success, the more desirable a settlement. *Id.*

Here, the parties disagree about the merits of Plaintiffs' claims and the viability of Defendant's various defenses. While Plaintiffs allege that Defendant failed to pay them overtime

for the time they worked in excess of forty hours per week, Defendants dispute any liability. Plaintiffs argue that if forced to litigate further, the parties would engage "complex, costly, and protracted wrangling" since Defendants have asserted several affirmative defenses. (ECF No. 83-4 at 7). In light of the uncertainty surrounding Plaintiffs' likelihood of success, this Court finds that this factor weighs in favor of approval.

### 2. Complexity and Expense of Litigation

The second factor the Court must consider is the complexity and expense of potential litigation. Here, Plaintiffs faced multiple, and potentially expensive, hurdles to victory. Some of these hurdles include overcoming a motion to dismiss, a motion to oppose certification, and eventually a trial. Additionally, Plaintiffs argue that even if they were successful on the merits of their claim, Defendants dispute the amount that would be due to them, so the amount of their recovery is uncertain. The Settlement Agreement eliminates these burdens, and thus, weighs in favor of approval.

### 3. Stage of Proceedings

The third factor is intended to ensure Plaintiffs have had access to the information needed to adequately assess their case and the desirability of the Settlement Agreement. *See Kritzer*, 2012 WL 1945144, at *7. This case has been pending for more than two years, and the parties represent they have engaged in extensive discovery. Because Plaintiffs have had available to them all the information needed to make an informed decision about the settlement, this factor weighs in favor of approval.

### 4. Judgment of Experienced Counsel

By agreeing to this settlement, counsel for both parties have indicated their shared belief that the Settlement Agreement is fair, reasonable, and adequate. The Court gives great weight to

the beliefs of experienced counsel.  *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) (Generally, "[t]he court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.").  Accordingly, this factor weighs in favor of approval.

### 5. *Nature of Negotiations*

Before approving an FLSA settlement, the Court must be convinced that the parties' Settlement Agreement "is non-collusive and the product of arms-length negotiations."  *Kritzer*, 2012 WL 1945144, at *7.  Here, the Settlement Agreement is a product of private mediation.  Indeed, the parties prepared mediation memoranda and spent a full day on March 3, 2020 negotiating a settlement with an independent mediator.  Given these representations, the Court is satisfied that the Settlement Agreement is a product of arms-length negotiations.

### 6. *Objections by Class Members*

In evaluating an FLSA settlement agreement the Court is required to consider objections, if any, raised by class members.  There have been no such objections in this case.

### 7. *Public Interest*

The final factor the Court must consider is whether the public interest would be served by settlement.  Because the parties' Settlement Agreement would end potentially long and protracted litigation, the Court finds that this factor weighs in favor of approval.  *Kritzer,* 2012 WL 1945144, at *8 ("While this case is not of general public interest, the public interest in favoring settlement certainly applies here, as the proposed settlement ends potentially long and protracted litigation.").

In sum, each of the seven fairness factors weigh in favor of approving the parties' Settlement Agreement.

### C. **Whether the Attorneys' Fees and Costs Award is Reasonable**

The Sixth Circuit has held that an award of attorneys' fees must be reasonable, meaning it must be "one that is adequate to attract competent counsel, but . . . [does] not produce windfalls to attorneys." *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999).

There are two methods for determining whether proposed attorney's fees are appropriate: the lodestar and the percentage-of-the-fund. *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 498 (6th Cir. 2011). When using the percentage-of-the-fund method, Courts in this Circuit generally approve of awards that are 1/3 of the total settlement. *See, e.g.*, *Rotuna v. W. Customer Mgt. Group, LLC*, 4:09CV1608, 2010 WL 2490989, at *8 (N.D. Ohio June 15, 2010) (approving of attorney's fees in the amount of 1/3 of the settlement fund). The lodestar figure represents the number of hours spent multiplied by reasonable rates. *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999). A district court has discretion to select which method is appropriate given the "unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them." *Id*. Although not mandatory, courts frequently cross-check counsel's request for percentage-of-the-fund awards against the lodestar. *Id*. at 501. Courts also frequently consider several factors in determining if attorney's fees are reasonable including:

> (1) the value of the benefit rendered to the class, (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others, (3) whether the services were undertaken on a contingent fee basis, (4) the value of the services on an hourly basis, (5) the complexity of the litigation, and (6) the professional skill and standing of counsel involved on both sides.

*Michel v. WM Healthcare Sols., Inc.*, No. 1:10-CV-638, 2014 WL 497031, at *15 (S.D. Ohio Feb. 7, 2014). The party seeking attorneys' fees bears the burden of documenting his entitlement to the award. *Id.* at 472.

Here, counsel for Plaintiffs is set to receive a fees and costs award of $57,114.25 under the Settlement Agreement, which represents approximately 60% of the total settlement fund of

6

$95,000. Plaintiffs' counsel argues that this fee is appropriate pursuant to the lodestar method because the time the attorneys have billed in this case and the fees that incurred exceed the amount they wish to be awarded by $7,265.

Counsel for Plaintiffs, Peter Contreras, represents that he has billed 74.7 hours on the Smyers action and 19.4 hours on the Carter action at a billing rate of $350 per hour. This represents a total of 94.1 hours at a value of $32,935. Counsel for Plaintiffs, Matthew Coffman, represents that he has billed 53.2 hours on the Smyers action 10.6 hours on the Carter action at a rate of $350 per hour. This represents a total of 63.8 hours at a value of $22,330.

The total value of the legal services rendered by Attorney Contreras and Attorney Coffman represents a total value of $55,265 for approximately 157.9 hours of billed time.

Attorney Coffman also reports approximately $2,114.25 in litigation expenses and expects to incur approximately $2,500 in expenses in obtaining settlement approval, administering he settlement, and concluding the two actions.

Understanding that math is not the strong suit of many attorneys, the Court is baffled by Plaintiffs Counsels' argument that their proposed fee award represents "a reduction of $7,265 in the lodestar fees." (ECF No. 83-4 at 7). Plaintiffs' counsel has billed for legal services in the amount of $55,265 plus $2,114.25 (equal to $57,379.25) and requests an attorney's fee award of $57,114.25. This represents a discount of $265. Even if this Court factors in the future expenses that Plaintiffs' counsel alleges that it will incur in the administration of the settlement ($2,500), that only represents an approximately $2,765 discount, not $7,265.

Rather than the lodestar method, this Court finds the percentage-of-the-fund method is more appropriate here. The total settlement fund is $95,000. This Court finds that counsel will receive one-third of the settlement fund, i.e., approximately $31,666.66. The adjusted aggregate

amount the 54 Plaintiffs will receive is $63,333.33. In reaching this conclusion, the Court does not question the time and labor counsel expended in hangling this matter. Rather, this Court's finding that an award of $57,114.25 is not warranted is based on the inherent nature of FLSA settlements, which tend to provide significant compensation to counsel rather than to the injured.

This Court finds that the balance of the below factors weighs in favor of finding percentage-of-the-fund amount reasonable.

### 1. Value of Benefits Rendered

The result that counsel has achieved in this case was fairly compensates Plaintiffs since each Plaintiff was expected to receive 125% of the damages they could have received at trial. *Michel*, 2014 WL 497031, at *15 (S.D. Ohio, 2014) (noting a "monetary recovery consisting of over 70% of class members' estimated damages has been recognized as a 'substantial and certain' benefit to the members . . . a recovery of approximately 50% of an average class member's damages has been recognized as 'a moderately good' result") (internal citations omitted).  This factor, therefore, weighs in favor of the proposed fees award.

### D. Societal Stake in Attorneys' Fees

The second factor, society's stake in rewarding attorneys who produce such benefits, also favors the proposed fees award.  This is because "[s]ociety has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own." *See id.* at *16. Here, counsel was integral in helping Plaintiffs recover damages for unpaid wages.

### E. Whether Services were Undertaken on Contingent Fee Basis

Given that counsel took this case on a contingency fee basis, they "undertook the risk of not being compensated, a factor that cuts significantly in favor of awarding them a significant recovery here." *See id.* As such, this third factor favors of awarding fees.

8

### F. Value of Services on Hourly Basis

As to the value of the services rendered on an hourly basis, this factor weighs in favor of the proposed fees award. Counsel for Plaintiffs have billed slightly more than the fee that the request here, which is close to the lodestar amount. Hence, Plaintiffs received adequate representation.

### G. Complexity of Litigation

With respect to the complexity of the litigation, this case has been pending for over two years and has involved extensive discovery, motion practice, and mediation. Furthermore, the claims and defenses in this suit have been and continue to be contested. Thus, this factor weighs in favor awarding fees.

### H. Skill of Counsel

The final factor, the professional skill and standing of the attorneys involved, also weighs in favor of the proposed fees award. Counsel has detailed the efforts that went into litigating and settling this case, as well as the reputation of the law firms involved. Moreover, because of counsel's efforts, Plaintiffs were able to recoup one-hundred and twenty-five percent of the total damages they could have received at trial. Plaintiffs received one-hundred percent of unpaid overtime wages plus an additional twenty-five percent for liquidated damages. Accordingly, the Court finds that awarding attorneys' fees and costs based on the percentage-of-the-fund is reasonable.

### I. Whether the Representative Plaintiff's Service Payment Award is Reasonable

In this Circuit, service awards to representative plaintiffs are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing the case and advising counsel in prosecution

of case." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997). Furthermore, Courts have established that "differentiation among class representatives based upon the role each played may be proper in given circumstances." *Dun & Bradstreet*, 130 F.R.D. at 374 (citing *In re Jackson Lockdown/MCO Cases*, 107 F.R.D. 703, 710 (E.D. Mich. 1985)); s*ee also Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (stating the factors warranting incentive awards are the "time and effort spent" by the individuals in question and "whether these actions resulted in a substantial benefit to Class Members").

Here, representative Plaintiff Smyers has contributed significant time and effort to this case. In addition to initiating the action and assisting with the damages analysis and estimated unpaid overtime calculations, Plaintiff Smyers traveled several hours to personally attend the full day mediation which resulted in a settlement.  Accordingly, the Court finds that the Representative Plaintiff's time and efforts support the requested service payment.

## IV. CONCLUSION

For the reasons stated herein, the Court **GRANTS with modifications** the Joint Motion for Settlement Approval (ECF No. 83).

**IT IS SO ORDERED.**

                                                          **ALGENON L. MARBLEY**
                                                          **CHIEF UNITED STATES DISTRICT JUDGE**

**DATE: December 4, 2020**